IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANK OF AMERICA, N.A., a national banking Association, as successor-in-interest to LaSalle Bank National Association, in its individual capacity and as authorized Agent, <br><br> Plaintiff, <br> v. <br><br> CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation, as successor-in-interest to Ticor Title Insurance, <br><br> Defendant. | Case No. 17 C 0407 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bank of America, N.A., as successor in interest the LaSalle Bank National Association, in its individual capacity and as authorized agent, has brought a two count complaint against defendant Chicago Title Insurance Company as successor in interest to Ticor Title Insurance Company, for a breach of a title insurance policy.[1] Count I is a claim for breach of contract. Count II is a claim titled "Bad Faith." Defendant has answered Count I, moved to dismiss Count II, raised a number of affirmative defenses, and has filed a counterclaim for declaratory judgment and/or "reformation of the policy to reflect the bargained for coverage." Plaintiff has moved to strike and/or dismiss defendant's counterclaim and first affirmative defense, both of which assert that Exclusion 3(a) of the underlying policy excludes plaintiff's claim. For the reasons described below, defendant's motion to dismiss Count II of the complaint

---

[1] Both plaintiff and defendant are successors in interest to the original parties to the underlying contracts. For ease, the court simply refers to the parties as plaintiff and defendant.

is granted. Plaintiff's motion to strike and/or dismiss the first affirmative defense and counterclaim is denied.

## BACKGROUND

In 2007 Cannonball, LLC sought to purchase and develop real property in Yorkville, Illinois, to build a shopping center called Kendall Marketplace. Plaintiff and Cannonball entered into a construction loan agreement which was secured by a construction mortgage, security agreement, assignment of rights and leases and fixture filing (the "mortgage") on the property. As part of the project Cannonball sold land to an anchor tenant, Home Depot, pursuant to a real property purchase agreement (the "purchase agreement"). In that purchase agreement, Cannonball agreed to reimburse Home Depot for a portion of a special tax imposed on the property by Yorkville (the "SSA tax"). Paragraph 22(h) of the purchase agreement provided for the reimbursement, and also provided lien rights to Home Depot should Cannonball fail to timely pay the reimbursement. That paragraph also provided that Cannonball's obligation "shall be a covenant which shall run with the land and bind [Cannonball's] grantees, successors and assigns including provisions regarding the SSA tax."

Cannonball and Home Depot also entered into a "developmental agreement." That agreement (§ 7.8(c)) referenced and incorporated § 22(h) of the purchase agreement, and also provided:

> 12.1 <u>Grant of Lien</u>. [Cannonball] hereby grants and conveys to Home Depot a lien on [Cannonball's] property to secure the performance by [Cannonball] of its obligations hereunder. Such lien shall be foreclosed in accordance with this Article 12.
>
> 12.4 <u>Priority</u>. The priority of a lien created pursuant to this Article 12 shall be established solely by reference to the date of recordation of the Memorandum of

> Development Agreement pursuant to Section 17.4 below; provided, however, such lien shall be subordinate to the lien of any first mortgage or deed of trust.

Cannonball, Home Depot, and plaintiff also entered a "payment and priority agreement" dated May 15, 2007 (as were the other agreements) that provided that "[plaintiff] shall have no obligations to the City or any of the Development agreement unless [plaintiff] expressly assumes [Cannonball's] obligations thereunder in writing."

On May 24, 2007, the purchase agreement, development agreement, and the mortgage were recorded in that order with the Kendall County Recorder. Also on May 24, 2007, defendant issued to plaintiff, the title insurance policy at issue.

Cannonball defaulted under the construction loan agreement and plaintiff sued for foreclosure in state court. With respect to Home Depot, the foreclosure complaint alleged that "the recorded and unrecorded claims and interests of this defendant, if any, including but not limited to any actual or potential rights to record liens or exercise any other rights against the Property, pursuant to the Home Depot purchase agreement, the Home Depot [development agreement] or any other agreements, are subordinate and inferior to the lien and interest of [plaintiff]." Home Depot counterclaimed for a declaration that its rights under the various agreements ran with the land and were binding on the grantees, successors, and assigns of Cannonball, including plaintiff. The parties filed cross motions for summary judgment. The state trial court granted plaintiff's motion, concluding that plaintiff's mortgage had priority and that Home Depot's tax reimbursement and lien rights were personal between Cannonball and Home Depot, did not run with property, and would be foreclosed and terminated upon entry of final order of foreclosure.

The appellate court affirmed in part and reversed in part, agreeing that plaintiff's mortgage had priority over any Home Depot lien, but concluded that Home Depot's tax reimbursement and lien rights are covenants that run with the land binding on plaintiff and its successors, and were not extinguished because plaintiff had actual knowledge of the tax reimbursement and lien rights before plaintiff recorded its mortgage, and because the mortgage was recorded after the memorandum of agreement and memorandum of development agreement. See Bank of America, N.A. v. Cannonball, LLC, 2014 IL App. (2d) 130858, 12 N.E.2d 841 (2d Dist. 2014).

In the instant action, plaintiff claims that as a result of the appellate court ruling, it sold the property for $1,780,000 less than what it would have sold for absent the SSA tax obligation. As a result, plaintiff sought indemnity from defendant based on the title insurance policy. Defendant, which represented plaintiff in the state court action against Home Depot, has denied coverage and refused to indemnify plaintiff, arguing that plaintiff's loss is excluded from the policy.

**DISCUSSION**

I. **Defendant's Motion to Dismiss Count II of the Complaint.**

In Count II, plaintiff attempts to assert a claim for "Bad Faith," alleging that for nearly two years defendant has refused to acknowledge its indemnity obligations without any reasonable or justifiable basis. It also alleges that defendant has "acted vexatiously, unreasonably, and in bad faith by refusing to honor its insurance obligations.

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A motion under Rule 12(b) challenges the sufficiency of the complaint, not its merits.

Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). The complaint must allege sufficient facts that, if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face the complaint must plead facts sufficient for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendant's motion to dismiss Count II is well taken. First, to the extent that plaintiff relies on § 155 of the Illinois Insurance Code, which provides for claims against insurers for bad faith denial of coverage, that statute is unavailable to plaintiff because the Insurance Code specifically exempts title insurance companies from its provisions. See 215 ILCS 5/451; Azran v. Fidelity National Financial, Inc., 2016 WL 4124286 *3 (N.D. Ill. Aug. 3, 2016). Instead, title insurance companies are governed by the Illinois Title Insurance Act, 215 ILCS 155/3, which contains no equivalent to § 155.

Next, to the extent that Count II purports to be a claim for "common law bad faith," it is barred by Illinois law. See Voyles v. Sandia Mortgage Corp., 196 Ill.2d 288, 297-98 (2001) (no independent tort claim for breach of covenant of good faith and fair dealing.).

Thus, to succeed, plaintiff must allege a tort independent from a breach of the policy, such as fraud or a violation of the Illinois Consumer Fraud Act. Count II contains no such allegation. Consequently it is dismissed.

**II.     Plaintiff's Motion to Strike and Dismiss Defendant's Counterclaim and First Affirmative Defense.**

5

Plaintiff has moved under Fed. R. Civ. P. 12(f) and 12(b)(6) to strike and dismiss defendant's counterclaim and first affirmative defense, arguing that: 1) that the counterclaim should be stricken simply because it is duplicative of defendant's first two affirmative defenses; and 2) neither the first affirmative defense nor Count I of the counterclaim, both of which seek to avoid coverage based on an exclusion for encumbrances "created, suffered, assumed or agreed to by the insured claimant," state a claim because defendant has not pled that plaintiff's intentional misconduct or inequitable behavior created the tax encumbrance at issue. The court rejects both arguments.

First, plaintiff is correct that the counterclaim is basically duplicative of defendant's first two affirmative defenses. The counterclaim, however, attaches numerous exhibits that are absent from both plaintiff's complaint and defendant's affirmative defenses. Additionally, as both parties acknowledge, an insurer (defendant) has the burden of proving that a policy exclusion applies to the plaintiff's claim. As a result, it is perfectly reasonable and proper for defendant to raise the exclusion as a defense. And, because (a) plaintiff has alleged that the exclusion does not apply, and (b) plaintiff raised the exclusion prior to filing the instant action, it is also reasonable (and perhaps required) that defendant seek a declaration from the court as to the parties' rights and obligations under the contract.

Moreover, even if the counterclaim and affirmative defenses are entirely duplicative, plaintiff will suffer no prejudice by having to respond to the counterclaim. The issue of whether Exclusion 3(a) applies is the key issue in this case. Striking the counterclaim as redundant would not remove the issue, and would not save plaintiff any time or money. See e.g., Balmoral

Racing Club, Inc. v. Churchill Downs, Inc. 2011 WL 6009610 *2 (N.D. Ill. Nov. 29, 2011). Consequently, the court denies plaintiff's motion to strike the counterclaim as redundant.

Plaintiff's motion to dismiss both the first affirmative defense and Count I of the counterclaim for failing to plead that plaintiff's intentional misconduct or inequitable dealings resulted in the tax encumbrance, fares no better. Exclusion 3(a) of the policy excludes from coverage "defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed, or agreed to by the insured claimant." The affirmative defense and counterclaim allege that plaintiff was well aware: (1) of the documents creating the tax encumbrance; (2) that the documents provided for the encumbrance to run with the land; and (3) the documents that created the encumbrance were intended to be and were recorded prior to plaintiff's mortgage. Indeed, the documents attached by plaintiff to the complaint, and by defendant to its counterclaim, indisputably demonstrate that plaintiff's attorney specifically agreed to the order of recordation so long as the policy included a special endorsement insuring plaintiff that the "priority" of the mortgage lien would not be impaired by the recording of the Home Depot agreements. The policy contains such an endorsement. As the Illinois Appellate Court held, however, priority does not equal extinguishment. Thus, when the property was sold at foreclosure, the funds were first applied to pay off plaintiff's mortgage. But because the tax encumbrance was recorded before the mortgage, the foreclosure could not extinguish it. Bank of America v. Cannonball, LLC, 2014 Il. App. (2d) at ¶31. By agreeing to the order of recordation, plaintiff had at least arguably agreed to the encumbrance.

Plaintiff argues to no avail that under Illinois law the exclusion will not be applied to exclude coverage unless the insured acted intentionally or wrongfully to create the encumbrance.

7

None of the cases it relies on, however, actually holds that such conduct is required. It is true that many of the cases in which the exclusion is applied involves such conduct, but none involve the instant situation. Indeed, <u>Home Federal Savings Bank v. Ticor Title Insurance Co.</u>, 695 F.3d 725 (7th Cir. 2012), on which plaintiff relies extensively, at least suggests that the exclusion may apply to the instant case. The <u>Home Federal</u> court stated, <u>id</u>. at 732-33 (emphasis added),

> The cases discussing the applicability of the "created or suffered" exclusion generally have stated that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured <u>or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property involved</u>. The courts have not permitted the insurer to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss.

Defendant has alleged that plaintiff agreed to the encumbrance when it agreed to the order of recordation. Plaintiff has submitted an affidavit from its lawyer stating that he and everyone else involved thought and intended that a foreclosure would extinguish Home Depot's encumbrance rights. That is obviously not totally correct, because Home Depot argued differently and persuasively in the foreclosure action. And, the documents submitted to this court by both parties show that Home Depot always wanted its tax reimbursement and lien rights to survive a foreclosure. In any event, defendant need not win its case at this stage. It is enough that it has pled facts that plausibly suggest that Exclusion 3(a) applies. <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. Consequently, plaintiff's motion to strike or dismiss the first affirmative defense and counterclaim is denied.

## **CONCLUSION**

For the reasons described above, defendant's motion to dismiss Count II of the complaint (Doc. 18) is granted. Plaintiff's motion to strike and dismiss defendant's counterclaim and first

affirmative defense (Doc. 24) is denied. Plaintiff is ordered to answer the counterclaim on or before June 12, 2017.

**ENTER:**     **May 18, 2017**

**Robert W. Gettleman
United States District Judge**